YODER & LANGFORD, P.C.
Robert Yoder, *pro hac vice*
robert@yoderlangford.com
8175 East Evans Road #13598
Scottsdale, Arizona 85267
Telephone: (602) 808-9578

SONOSKY, CHAMBERS, SACHSE,
MILLER & MONKMAN, LLP
Lloyd B. Miller, *pro hac vice*
lloyd@sonosky.net
Whitney A. Leonard, *pro hac vice*
whitney@sonosky.net
Chloe E. Cotton, *pro hac vice*
chloe@sonosky.net
510 L Street, Suite 310
Anchorage, Alaska 99501
Telephone: (907) 258-6377

*Attorneys for Plaintiff Pechanga Band of Indians*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

PECHANGA BAND OF INDIANS,

Plaintiff,

v.

ROBERT F. KENNEDY, JR., *et al.*,

Defendants.

No. 5:25-CV-03605-JGB-SP

**DECLARATION OF MONTY SOOTER IN SUPPORT OF PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR IMMEDIATE INJUNCTIVE RELIEF**

Date: April 27, 2026
Time: 9:00 a.m.
Ctrm: Courtroom 1, 2nd Floor
Honorable Jesus G. Bernal

I, Monty Sooter, certify, declare and state as follows:

1. I am over 21 years of age, and I am competent to testify as to the matters set forth herein.

2. I currently serve as the Chief Executive Officer / CEO of OneTogether Solutions, LLC ("OneTogether").

3. Prior to that I served as OneTogether's Chief Operating Officer / COO.

4. I was also a co-founder of OneTogether in October, 2018, and have been actively involved in the operations of OneTogether from the start.

5. OneTogether is a Native-owned company formed for the purpose of advancing healthcare sovereignty for Indian Tribes by helping them develop and operate opioid treatment programs that meet the needs of their specific tribal communities. Our role is to provide expertise to tribal health departments as they stand up their tribal treatment programs. Typically, that expertise is not something that Tribes have within their in-house team, especially at the start-up stage. Nor is this something that many tribes can get assistance with through Indian Health Service. By bringing this expertise, we help Tribes ensure the success and efficiency of their opioid treatment programs.

6. When working with a Tribe to stand up and operate an opioid treatment program, we always work under the direction and control of the tribal government that is operating, or that will operate, the program. We have also offered Tribes that we work with the opportunity to invest in OneTogether, which reinforces their control over and

stake in the programs we help them develop. OneTogether is a Native-owned operation made of Native individuals and Tribes for the benefit of Tribal communities.

7. In addition to Pechanga's proposed opioid treatment program, OneTogether currently works with other Tribes to operate opioid treatment facilities, two of which have received IHS approval to operate, and do operate, these programs within the State of California under the Indian Self-Determination and Education Assistance Act (ISDEAA).

8. The two other Tribal facilities that OneTogether helps Tribes to operate in California are geographically distant and serve different regions than Pechanga's proposed facility. The closest of the two is more than a 1.5-hour drive from Pechanga's proposed facility in Perris, California.

9. In helping Pechanga develop its proposal, OneTogether worked with the Tribe to develop an opioid treatment program that would specifically address needs that Pechanga members and other Native patients in the area are facing (e.g., much higher rates of substance abuse-related overdoses and fatalities than other groups), and would provide services that they would not otherwise have access to. OneTogether met with the Tribe and learned first-hand what services were needed, and the challenges that Pechanga members and other Native patients in the area were facing.

10. In the development process, OneTogether also worked with Pechanga and Riverside county to specifically confirm the need for additional services in the area, and as needed to support the ability to hire staff and offer state-of-the-art treatment options.

11. This process ultimately included a study by the county to confirm actual need within the county and need at the specific site proposed by Pechanga. Per the State of California – Health and Human Services Agency, Form DHCS 5027, independent health officials within Riverside County specifically confirmed that "there is need for the narcotic treatment program services described in the [Pechanga] program's protocol in the community in which it is located." A copy of that certification is attached as Exhibit A.

12. The opioid treatment program proposed by Pechanga has also centered on providing care to Pechanga members and other Native patients from the start.

13. A key recital within the proposed agreement between OneTogether and Pechanga (as revised during negotiations with IHS) illustrates the purpose of the proposed program itself:

> "In 2017, the U.S. Department of Health and Human Services declared the opioid crisis a public health emergency. The opioid crisis has had a disproportionate and (according to the IHS) 'immense' impact on Native American communities and Indian country. According to the Centers for Disease control, age-adjusted rates of drug overdose rates are highest for [Native Americans] as compared to any race, and opioids are involved in nearly three-quarters of all such [Native American] drug overdose deaths."

14. The fact that the program will also serve non-Native patients in no way diminishes the care that Native patients will receive at the Pechanga facility, just as it does not diminish Native care provided at other tribal programs that IHS has already approved under ISDEAA. To the contrary, the revenue generated by serving non-Native patients

(expressly permitted and commonly approved under ISDEAA) is part of what will enable Pechanga to offer state-of-the-art services to Native patients.

15. As expressly noted in the proposed agreement between OneTogether and Pechanga (as revised during negotiations with IHS), "These services to non-Native people…are critical to the volume of services needed to operate a successful program, without which these services could not be made available to Indian patients."

16. I also want to clarify the role that OneTogether would play, and the scope of services, with regard to the Pechanga program. First and foremost, OneTogether is not a health care provider, and it does not provide medical care. Rather, OneTogether is a management services organization, also called an "MSO" in the health care industry. MSOs are a well-known and important part of the health care system and enable providers to remain focused on delivering medical care to patients, while gaining assistance for non-medical responsibilities from MSOs. As they do in the agreement between OneTogether and Pechanga, MSO (and hence OneTogether) responsibilities include designated non-clinical support services that any health care facility must address. All medical staff providing actual care to patients of the Pechanga program (the most important feature of the program) will be Pechanga employees, or employees of a wholly owned entity of Pechanga. They are not employees of OneTogether. OneTogether's role is merely to assist Tribes in developing and operating successful programs in a highly regulated area that clearly requires specialized expertise, particularly on start-up.

17. In fact, OneTogether and Pechanga were very intentional in drafting their master services agreement (as proposed to IHS during negotiations) to expressly confirm that Pechanga must retain all required control and management authority to ensure ISDEAA compliance, including, in part, as follows:

> "Notwithstanding anything herein to the contrary, the Tribe, directly or through a wholly owned Tribal entity, shall at all times remain the sole owner of the Clinic, and shall conduct, operate and administer all Clinic programs consistent with all requirements of the ISDEAA…."

> "Without limitation, the Tribe, directly or through its wholly owned entity, shall plan, conduct, consolidate and administer Clinic programs, services, functions and activities [or portions thereof] that are carried out for the benefit of Indians because of their status as Indians per 25 U.S.C. § 5285(b)."

> "[The agreement is intended to provide] the Tribe access to the technical assistance it needs to develop its own leadership and skills critical to the realization of self-government, while asserting an effective voice in the planning and implementation of Clinic programs for the benefit of Indians which are responsive to the needs of the Tribe and other Indian communities…."

> "Notwithstanding anything herein to the contrary, [OneTogether] shall not assume any level of control over Clinic ownership, operations, or management that would be inconsistent with this Section or ISDEAA."

> "[OneTogether] has no clinical duties for, and this Agreement does not permit [OneTogether] to provide in any respect, Professional Services with regard to such patients."

> "The Tribal Parties shall have the right to terminate this Agreement early in the event that such action is required for compliance with ISDEAA."

18. Finally, I want to clarify that IHS was clearly aware of OneTogether's role with regard to other California Tribal opioid treatment programs that IHS has approved under ISDEAA. IHS (through its then California Area Lead Negotiator, Travis Coleman) met in person with OneTogether before approving the two other current Tribal opioid treatment programs in California. Mr. Coleman was supportive of the programs and expressed that support to OneTogether.

19. IHS was aware of OneTogether's role when IHS approved the ISDEAA renewal of another tribal program in California, at the same time that the Pechanga proposal was under review.

20. The scope of services provided by OneTogether for each of the other ISDEAA programs approved by IHS in California is substantially identical to the scope of services for the proposed Pechanga program. In fact, as compared to the two previously approved programs, the Pechanga program agreement includes more extensive language reiterating the Tribe's ultimate control and authority over operations and management.

[Continued on following page]

21. The foregoing declarations are made upon my personal knowledge and belief, and upon review of facts or documents to which I have access based on my position with OneTogether.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of April 2026.

Monty Sooter, CEO
OneTogether Solutions, LLC

# Sooter Declaration – Exhibit A

## Form DHCS 5027: Riverside County Certification (December 9, 2024)

State of California — Health and Human Services Agency

Department of Health Care Services
Counselor & Medication Assisted
Treatment Section, MS 2603
PO Box 997413
Sacramento, CA 95899-7413

## COUNTY CERTIFICATION

| **Section A** | **Program Information** | |
|---|---|---|
| License Number (if applicable): Pending | National Provider Identifier (NPI): 1780455501 | |
| Name of Legal Entity: Harmony Health Center Perris LLC | | |
| Name of Narcotic Treatment Program (if different from legal entity name): N/A | | |
| Facility Street Address (if applicable Room/Suite/Unit): 305 E 4th St Ste 100 | | |
| City: Perris | County: Riverside | Zip Code: 92570 |
| Mailing Address (if applicable Room/Suite/Unit)/(if different than facility street address): -same- | | |
| City: | County: | Zip Code: |

| **Section B** | **Type of Program Request** |
|---|---|

Check one box:

- ☑ Initial Application – Proposed Capacity: 150
- ☐ License Renewal – Current Licensed Capacity: _________
- ☐ Relocation

| **Section C** | **Regulation Authority** |
|---|---|

Pursuant to CCR, Title 9, § 10040 a complete protocol must include a statement from the County Alcohol and Drug Program Administrator certifying that:

1) There is need for the narcotic treatment program services described in the program's protocol in the community in which it is located, and
2) All local ordinances, fire regulations, and local planning agency requirements have been complied with.

Pursuant to CCR, Title 9, § 10055(b)(2), the renewal of a narcotic treatment program license requires the County Alcohol and Drug Program Administrator to submit to the Department a certification for continued treatment services of the narcotic treatment program and a recommendation for renewal of the license.

State of California — Health and Human Services Agency

Department of Health Care Services
Counselor & Medication Assisted Treatment Section, MS 2603
PO Box 997413
Sacramento, CA 95899-7413

## COUNTY CERTIFICATION

| Section D | County Information |
|---|---|
| County: Riverside | |
| Address: 3525 Presley Avenue, Riverside, CA 92507 | |
| Telephone Number: (951) 782-2400 | Fax Number: |

| Section E | County Recommendation |
|---|---|

Check one box:

☑ County recommends the program's initial licensure, renewal or relocation.

☐ County **does not** recommend initial program licensure, renewal or relocation. **Documentation attached to support the county's recommendation.**

| Section F | Declaration |
|---|---|
| I declare that I am the County Alcohol and Drug Program Administrator responsible for issuing the county recommendation. | |
| Print Name: April Frey | Title: County Alcohol and Drug Program Administrator |
| Signature: [signature] | Date: 12/9/24 |

**PRIVACY STATEMENT**

PRIVACY STATEMENT (Civil Code Section 1798 et seq.)

All information requested in this form is mandatory. This information is required by the Department of Health Care Services (Department) by the authority of Health and Safety Code, Section 11839.3 and California Code of Regulations, Title 9, Section 10055. The consequences of not supplying the mandatory information requested is that review of the application shall be terminated, which may result in lapse of licensure and/or imposition of fines. The Department may share or provide any of the information provided in or with this form to the California Health and Human Services Agency, the California State Controller's Office, the California Department of Justice, the California Department of Consumer Affairs, the Department of Corporations, or other state or local agencies as appropriate, the Federal Bureau of Investigation, the Internal Revenue Service, the U.S. Justice Department, the United States Drug Enforcement Administration, the United States Department of Health and Human Services, and the United States Substance Abuse and Mental Health Services Administration. For more information or access to records containing your personal information maintained by the Department, contact the Counselor & Medication Assisted Treatment Section Officer of the Day at (916) 322-6682.