JS-6

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

PECHANGA BAND OF INDIANS,

Plaintiff,

vs.

ROBERT F. KENNEDY, JR., CLAYTON FULTON, BEVERLY MILLER, and WESLEY SIMMONS,

Defendants.

Case 5:25-cv-03605-JGB-SP

*Honorable Jesus G. Bernal*

**JUDGMENT**

## **JUDGMENT**

Pursuant to the Court's Order entered substantially contemporaneously, and after considering the papers filed in support of and in opposition to the parties' cross-motions for summary judgment, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment is **GRANTED**.

2. Judgment is **ENTERED** in favor of Plaintiff and against Defendants.

3. The Court **ORDERS**:

   a. The Compact and Multi-Year Funding Agreement contained in Pechanga's final offer and attached to the Court's Order as Exhibit A and Exhibit B, respectively, are deemed agreed to by the Secretary as of the date of this order.

b. All terms and provisions of the Compact and Multi-Year Funding Agreement are to take effect immediately upon publication of this order, with the exception of Compact Article II, Sections 2-3, and Multi-Year Funding Agreement Sections 6(a), 7, and 11 (together referred to as the "Excepted Sections").

c. The Excepted Sections shall take effect no later than February 1, 2027, or on any earlier date as determined by the Secretary such that there is timely disbursal of funds under the Compact and Multi-Year Funding Agreement for fiscal year 2027.

**IT IS SO ORDERED.**

Dated: July 1, 2026

Honorable Jesus G. Bernal
United States District Judge

2

5:25-cv-03605-JGB-SP

JUDGMENT

# Exhibit A

**COMPACT OF SELF-GOVERNANCE
BETWEEN THE
PECHANGA BAND OF INDIANS
AND THE
UNITED STATES OF AMERICA**

**Article I - Authority and Purpose**

**Section 1 – Authority.**  This agreement, denoted a Compact of Self-Governance (hereinafter referred to as the "Compact"), is entered into by the Secretary of the Department of Health and Human Services (hereinafter referred to as the "Secretary"), for and on behalf of the United States of America pursuant to the authority granted by PL 106-260, hereinafter referred to as Title V, of the Indian Self-Determination and Education Assistance Act (Public Law 93-638, as amended; ISDEAA), and by the Pechanga Band of Indians (the "Tribe") by the authority of the Constitution and Bylaws of the Pechanga Band of Indians.  The Director of the Indian Health Service ("IHS"), by signing this Compact commits the Secretary to the extent and within the scope of the Secretary's delegation of authority to enter into a compact and funding agreement pursuant to Title V or as otherwise authorized.

**Section 2 – Purpose.**  This Compact shall be liberally construed to achieve its purposes which are as follows:

(a)    To carry out the Self-Governance Program, authorized by Title V of the ISDEAA, as amended, and to permit an orderly transition from Federal domination of programs and services to provide the Tribe with meaningful authority, control, funding and discretion to plan, conduct, redesign, and administer programs, services, functions, and activities (or portions thereof) that meet the needs of the Tribe.

(b)    To enable the Tribe to redesign programs, activities, functions and services of the IHS; to reallocate funds for such health programs, functions, services and activities, according to its tribal priorities; to provide such programs, functions, services and activities, as determined by its tribal priorities; to enhance the effectiveness of its tribal government through the reduction of federal management and control.

(c)    To enable the United States to maintain and improve its unique and continuing relationship with and responsibility to the Tribe and which will allow the Tribe to: take its rightful place in the family of governments in the federal constitutional system; reorganize tribal government programs and services and provide a documented example for the development of future Federal-Indian policy; remove federal obstacles to effective self-governance; this policy of tribal self-governance shall permit an orderly transition from Federal domination of programs and services to effective tribal control of planning, operation, and administration of those programs and services to meet the health care needs of the Tribe and to

Pechanga Band of Indians
Compact of Self-Governance

further the federal policies set out at Section 3 of Title V and the United States' responsibilities under the ISDEAA and the Indian Health Care Improvement Act (Public Law 94-437), as amended by P.L. 111-148, ("IHCIA"). The Department of Health and Human Services is also expected to reorganize, restructure, or take other action to provide the same level of service to other tribal governments and demonstrate new policies and methods to provide improved service delivery to address tribal needs. In fulfilling its responsibilities under the Compact, the Secretary hereby pledges that the Department will conduct all relations with the Tribe on a Government-to-Government basis. As provided in 25 U.S.C. § 5325(n), to the extent that programs, functions, services, or activities carried out under this Compact reduce the administrative or other responsibilities of the Secretary with respect to the operation of Indian programs and result in savings that have not otherwise been included in the amount of funds provided under the Compact and associated funding agreements, the Secretary shall make such savings available for the provision of additional services to program beneficiaries, either directly or through contractors, in a manner equitable to both direct and contracted programs.

(d)     To ensure that the Tribe is able to participate in all Tribal Self-Governance Activities called for in Title V.

**Section 3 – Tribal Law and Forums.** The duly enacted laws of the Tribe shall be applied in the execution of programs, functions, services and activities of the Tribe under this Compact and the powers and decisions of the Tribe's Court shall be respected, to the extent that federal law construed in accordance with the applicable canons of construction and Title V of the ISDEAA, as amended, is not inconsistent. This shall not be construed as a waiver of federal sovereign immunity, or that of the Tribe, but shall govern disputes between tribal members, or other persons, and the Tribe regarding programs, functions, services and activities under the Compact and related Funding Agreement(s).

### Article II - Terms, Provisions and Conditions

**Section 1 – Term.** The term of this Compact shall begin when it is signed by the Tribe and the Secretary on the Effective Date and shall extend thereafter throughout the period authorized by Title V of the ISDEAA, and any subsequent amendment thereto, and shall remain in effect for so long as is permitted by Federal law or until terminated by mutual written agreement, retrocession, or reassumption pursuant to Section 504(d) of Title V (25 U.S.C. § 5384(d)).

**Section 2 – Effective Date.**

(a)     This Compact and the Funding Agreement, attached hereto as Attachment 2, are effective as of the earlier of the date of approval by the Secretary or deemed approval per 25 U.S.C. §5387(b).

Page 2

Pechanga Band of Indians
Compact of Self-Governance

(b)     Each Funding Agreement and successor Funding Agreement is deemed to be incorporated, as negotiated, by reference into this Compact. In the event of inconsistency between the Compact and this or any successor Funding Agreement, the provisions of the Compact shall prevail.

**Section 3 – Funding Amount.** Subject only to the appropriation of funds by the Congress of the United States and in accordance with Section 508 of Title V of the ISDEAA (25 U.S.C. § 5388), as amended, the Secretary or an authorized representative shall provide to the Tribe the total amount of funds specified in the Funding Agreement incorporated by reference in Article VI, Section 2, of this Compact.

**Section 4 – Payment.**

(a)     **Payment Schedule.** To the extent authorized by law, the Secretary or an authorized representative will make available the funds specified for each Agreement by paying to the Tribe, in advance, lump sum payment the total amount provided for in the Funding Agreement on the effective date of the Agreement, unless otherwise provided in a schedule set forth in the Funding Agreement. If full fiscal year appropriations are not enacted by Congress prior to the effective date of any Funding Agreement, full payment shall be provided within thirty days after the date on which the Office of Management and Budget apportions the appropriations for that fiscal year for the programs, functions, services and activities subject to the Compact.

Payments shall include financial arrangements to cover funding during periods under continuing resolutions to the extent permitted by such resolutions.

(b)     **Interest on Advances.** The Tribe receiving funds under the Funding Agreement pursuant to this Compact shall be permitted to retain interest earned on funds advanced pending disbursement as authorized by law. Interest earned on advances shall not diminish the amount of funds the Tribe is authorized to receive under its Funding Agreement in the year earned or in any subsequent year. All funds transferred under the Funding Agreement pursuant to this Compact shall be managed using the prudent investment standard pursuant to Section 508(h) of Title V (25 U.S.C. § 5388(h)).

(c)     **Interest on Late Payments.** The Indian Health Service shall comply with the prompt payment requirements of Chapter 39 of Title 31 of the United States Code, including payment of interest for delayed payments.

**Section 5 – Reports to Congress.** Pursuant to Section 514 of Title V (25 U.S.C. § 5394), the Secretary shall submit to the Senate Committee on Indian Affairs and the House Resources Committee a written report regarding the administration of Title V. The report shall include a detailed analysis on the level of need being presently funded or unfunded for the Tribe under this Compact and Funding Agreement authorized by Title V. In compiling the report, the

Page 3

Pechanga Band of Indians
Compact of Self-Governance

Secretary may not impose any reporting requirements on the Tribe not otherwise provided in Title V.

**Section 6 – Audits.**

(a)    The Tribe shall provide to the Designated Official (as defined in Article V) an annual single organization-wide audit as prescribed by the Single Audit Act of 1984, 31 U.S.C. § 7501, *et seq.,* and shall adhere to generally accepted accounting principles and applicable Circulars of the Office of Management and Budget. A copy of this audit will be sent simultaneously to the Indian Health Service Audit Resolution Branch and the cognizant agency.

(b)    Pursuant to Section 506(c)(2) of Title V (25 U.S.C. § 5386(c)(2)), the Tribe shall apply cost principles under the applicable Office of Management and Budget Circular, except as modified by section 106(k) of the ISDEAA (25 U.S.C. § 5325(k)), other provisions of law, or by any exemptions to applicable Office of Management and Budget Circulars subsequently granted by the Office of Management and Budget. IHS will assist the Tribe in obtaining such additional exemptions from OMB as are requested by the Tribe.

(c)    No other audit or accounting standards shall be required by the Secretary.

(d)    Any claim by the Federal Government against the Tribe for funds received under the Funding Agreement based on an audit under this section shall be subject to the provisions of Section 106(f) of ISDEAA (25 U.S.C. § 5325(f)), as amended.

**Section 7 – Records.** The following provisions will supplement tribal law on document disclosure and will govern record keeping associated with this Compact:

(a)    Tribal records shall not be considered federal records for the purposes of Chapter 5 of Title V, United States Code (U.S.C.).

(b)    Pursuant to, and in accordance with, Section 506(d) of Title V (25 U.S.C. § 5386(d)), the Tribe shall maintain a record keeping system, and, after 30 days advance notice, provide reasonable access to such records to the Secretary or an authorized representative to enable the Department of Health and Human Services to meet its minimum legal record keeping system requirements under sections 3101 through 3106 of title 44, U.S.C.

(c)    The Tribe shall maintain in its record keeping system all documents necessary for the annual audit requirement in Section 6 of this Article, and shall provide reasonable access to records to the Secretary or an authorized representative.

(d)    The Tribe and Secretary, or authorized representatives, shall develop a mutually acceptable process or method to ensure that data collection and exchange takes

Page 4

Pechanga Band of Indians
Compact of Self-Governance

place. The Tribe shall have direct access to Indian Health Service electronic reporting systems for reporting purposes.

**Section 8 – Property.** In accordance with Section 512(c) of Title V (25 U.S.C. § 5392(c)), at the request of the Tribe, the Secretary:

(a)    Shall permit the Tribe to use existing school buildings, hospitals, and other facilities and all equipment therein or appertaining thereto and other personal property owned by the Government within the Secretary's jurisdiction under such terms and conditions as may be agreed upon by the Secretary and the Tribe for their use and maintenance;

(b)    May donate to the Tribe title to any personal or real property found to be excess to the needs of any agency of the Department, or the General Services Administration, except that – (A) subject to the provisions of subparagraph (B), title to property and equipment furnished by the Federal Government for use in the performance of the compact or funding agreement or purchased with funds under any compact or funding agreement shall, unless otherwise requested by the Tribe, vest in the Tribe; (B) if property described in subparagraph (A) has a value in excess of $5,000 at the time of retrocession, withdrawal, or reassumption, at the option of the Secretary upon the retrocession, withdrawal, or reassumption, title to such property and equipment shall revert to the Department of Health and Human Services; and (C) all property referred to in subparagraph (A) shall remain eligible for replacement, maintenance, and improvement on the same basis as if title to such property were vested in the United States; and

(c)    Shall acquire excess or surplus Government personal or real property for donation to the Tribe if the Secretary determines the property is appropriate for use by the Tribe for any purpose for which this Compact and Funding Agreement is authorized under Title V.

(d)    The Tribe shall maintain a record of all property referred to in subsections (a) through (c) above, including property purchased with funds under this Compact for purposes of replacement.

**Section 9 – Savings.** If it becomes apparent that funds allocated by the Tribe pursuant to its budget process for any activity as defined in the Funding Agreement are necessary to be used for an activity of higher priority as determined by the Tribe, the Tribe may reallocate that excess to any other activity authorized under this Compact. Any funds not expended during the term of any of the Fiscal years of this Compact may be carried over to the succeeding Fiscal year, but such carry-over shall not diminish the amount of funds that the Tribe is authorized to receive in that succeeding Fiscal year or in any subsequent Fiscal year.

**Section 10 – Transportation.**

Page 5

Pechanga Band of Indians
Compact of Self-Governance

(a)     Use of Motor Vehicles.  Subject to the agreement of the General Services Administration (GSA) and at the Tribe's request, the Secretary shall make best efforts to acquire Interagency Motor Pool (IMP) vehicles and related services for performance of PSFAs under this Compact and associated Funding Agreements in accordance with GSA regulations. The Tribe will satisfy any reporting requirements to the extent provided for in the Tribe's agreements with the GSA, which are not attached to this Compact or Funding Agreement and are not incorporated by reference into this Compact or Funding Agreement.

(b)     Use of Other Transportation Services.   The Secretary, or authorized representative, shall make best efforts to obtain the concurrence of the General Services Administration to provide the Tribe and its employees operating under this Compact and Funding Agreement with eligibility for services and supplies pursuant to GSA programs and contracts with private entities, including airlines and other transportation carriers, in accordance with Section 508(e) of Title V (25 U.S.C. § 5388(e)).

**Section 11 – Regulatory Authority.** The Secretary and the Tribe agree to utilize the following procedures governing the establishment and application of program rules and regulations under this Compact:

(a)     **Program Rules.** In accordance with Section 517(e) of Title V (25 U.S.C. § 5397(e)), unless expressly agreed to by the Tribe in this Compact or the Funding Agreement, the Tribe shall not be subject to any circular, policy, manual, guidance, or rule adopted by the Indian Health Service, except for the eligibility provisions of section 105(g) of the ISDEAA (25 U.S.C. § 5324(g)) and the implementing regulations (42 C.F.R. Part 137) promulgated pursuant to Section 517 of Title V (25 U.S.C. § 5397).

(b)     **Federal Regulations**

(1) **Applicable Federal Regulations.** The Title V regulations shall apply to this Compact unless the Tribe submits a request for waiver in accordance with the procedure set forth in Section 512(b) of Title V (25 U.S.C. § 5392(b)) and the Title V implementing regulations.

(2)     **Waiver of Federal Regulations**

(A)     In accordance with Section 512(b) of Title V (25 U.S.C. § 5392(b)), the Tribe may submit a written request to waive application of a regulation promulgated under Section 517 of Title V (25 U.S.C. § 5397) or the authorities specified in section 505(b) of Title V (25 U.S.C. § 5385(b)) for this Compact or the Funding Agreement, to the Secretary identifying the applicable Federal regulation sought to be waived and the basis for the request.

Page 6

Pechanga Band of Indians
Compact of Self-Governance

(B)     Waivers of regulations shall be submitted and addressed in accordance with the procedures set forth in Section 512(b) of Title V (25 U.S.C. § 5392(b)) and subpart J, "Regulation Waiver," of the Title V regulations.

**Section 12 – Disputes.**

(a)     All disputes between the Indian Health Service and the Tribe under this Compact, or the associated Funding Agreement, shall be subject to the provisions of Title V and Section 110 of the ISDEAA (25 U.S.C. § 5331), as amended, and all remedies provided for therein shall be available to the Tribe. Actions and proceedings to enforce the Tribe's rights and the Secretary's obligations under this Compact and the associated Funding Agreement(s) shall be subject to the Equal Access to Justice Act, Public Law 96-481, as amended, to the same extent as are actions and proceedings involving contracts or grants under the ISDEAA, as amended.

(b)     In the alternative, or in addition to the remedies and procedures in Title V and Section 110 of the ISDEAA (25 U.S.C. § 5331), the parties may use the processes authorized and encouraged in the Administrative Dispute Resolution Act, 5 U.S.C. Section 581, for more informal resolution of disputes arising under this Compact and the associated Funding Agreement(s).

**Section 13 -- Retrocession.** Any retrocession under this Compact shall be governed by the provisions of Section 506(f) of Title V (25 U.S.C. § 5386(f)).

(a)     The parties agree that the funds which the Tribe has remaining unexpended at the time of a retrocession shall be made available to the Secretary to provide services for those programs retroceded to the Secretary pursuant to this clause.

(b)     In the event of a retrocession, nothing in this Compact shall be construed as preventing the Tribe from submitting a proposal for a grant or contract under Title I of the Act to operate any of the programs, functions, services or activities governed by this Compact and Funding Agreement(s). In such event, the Tribe shall maintain its mature contractor status.

(c)     At the Tribe's option, it may elect to retrocede only a portion of the programs, functions, services or activities undertaken under this Compact and the associated Funding Agreement(s). In that instance, the amount of funds and the property remaining in the Tribe's possession for purposes of carrying out the programs, functions, services or activities retroceded shall be returned to the Secretary under this retrocession procedure.

Pechanga Band of Indians
Compact of Self-Governance

(d)　　In addition to a retrocession to the Secretary, upon request by the Tribe, the Tribe may convert any or all of the programs, functions, services or Activities undertaken pursuant to this Compact and the associated Funding Agreement(s) to a contract under Title I of this Act, and shall maintain its mature contractor status.

**Section 14 – Tribal Administrative Procedures.**　Tribal law and tribal forums shall provide administrative due process rights pursuant to the Indian Civil Rights Act of 1968, 25 U.S.C. § 1301, *et seq.,* that persons, or groups of persons, may have with respect to services, activities, programs, and functions that are provided by the Tribe pursuant to this Compact.

**Section 15 – Successor Funding Agreements.**

(a)　　Negotiations for a successor Funding Agreement, as provided for in Article VI, Section 2, shall begin no later than 150 days in advance of the conclusion of the preceding Funding Agreement.　The Tribe is hereby assured that future funding of successor Funding Agreements shall only be reduced pursuant to the provisions of Section 508(d) of Title V (25 U.S.C. § 5388(d)).　The Secretary or an authorized representative agrees to prepare and supply relevant information, and promptly to comply with the Tribe's requests for information reasonably needed to determine the funds that may be available for a successor Funding Agreement as provided for in Article VI, Section 2 of this Compact.

(b)　　Pursuant to Section 505(e) of Title V (25 U.S.C. § 5385(e)), if the parties are unable to conclude negotiation of a successor Funding Agreement, the terms of this Compact and the existing Funding Agreement shall, unless otherwise agreed to by the parties, remain in effect until a successor Funding Agreement is agreed to.　Any increases in funding to which the Tribe is entitled by statute, or increases, which the Tribe subsequently negotiates, shall be included in the successor Funding Agreement.

**Section 16 – Title I Provisions.**　Pursuant to Section 516(b) of Title V (25 U.S.C. § 5396(b)), the following provisions of Title I of the ISDEAA, as amended, shall apply to this Compact, and the term "contract" as set forth in those provisions, shall include this Compact and its associated Funding Agreements:

section 102(d) (Federal Tort Claims Act protection for claims arising out of the
　　performance of this Compact) (25 U.S.C. § 5321(d));
section 103 (tribal grants) (25 U.S.C. § 5322);
section 104 (use of federal personnel) (25 U.S.C. § 5323);
section 105(a)(1) (exemption from federal procurement and other contracting laws and
　　regulations) (25 U.S.C. § 5324(a)(1));

Page 8

Pechanga Band of Indians
Compact of Self-Governance

section 105(f) (property) (25 U.S.C. § 5324(f));
section 105(k) (access to federal sources of supply) (25 U.S.C. § 5324(f));
section 105(l) (leasing of tribal facilities) (25 U.S.C. § 5324(l));
section 105(m) (construction) (25 U.S.C. § 5324(m));
section 106(a) (minimum compact funding) (25 U.S.C. § 5325(a));
section 106(b)(l) through (5) (prohibitions against funding reductions) (25 U.S.C. § 5325(b)(1)-(5));
section 106(c) (reporting to Congress) (25 U.S.C. § 5325(c));
section 106(d) (exemption from adverse adjustment due to shortfalls in recoveries) (25 U.S.C. § 5325(d));
section 106(f) (limitations period for right of action or other remedy relating to cost
     disallowance) (25 U.S.C. § 5325(f));
section 106(j) (use of Compact funds for matching or cost participation requirements) (25 U.S.C. § 5325(j));
section 106(k) (allowability of cost expenditures) (25 U.S.C. § 5325(k));
section 106(m) (program income) (25 U.S.C. § 5325(m));
section 106(n) (unanticipated Secretarial savings) (25 U.S.C. § 5325(n));
section 110 (judicial and administrative remedies) (25 U.S.C. § 5331);
section 111 (tribal sovereign immunity and United States trust responsibility) (25 U.S.C. § 5332); and
     the following subparagraphs of section 108(c) (25 U.S.C. § 5329(c)):
     1(b)(5) (limitation of costs);
     1(b)(6)(B)(iii) (payment of interest under the Prompt Payment Act);
     1(b)(7)(A) (exemption of tribal records from the Freedom of Information Act);
     1(b)(8)(A) (transfer of divisible property);
     1(b)(8)(C) (joint use agreement regarding non-divisible property);
     1(b)(8)(D) (Tribal authority to acquire excess property);
     1(b)(8)(E) (Secretarial assistance in obtaining confiscated or excess property);
     1(b)(8)(F) (issuance of screener identification card);
     1(b)(9) (availability of funds);
     1(b)(10) (Tribal authority to obtain interagency motor pool vehicles and related
          services);
     1(b)(11) (exemption from program guidelines, manuals, and policy directives);
     1(d) (obligations of the United States); and
     1(e)(2) (Compact and annual funding agreement modifications).

     **Section 17 – Secretarial Approval.** For the term of the Compact, the provisions of 25 U.S.C §§ 81 and 476 shall not apply to attorney and other professional contracts of the Tribe, pursuant to Section 511(b) of Title V (25 U.S.C. § 5391(b)).

     **Section 18 – Limitation of Costs.** The Tribe shall not be obligated to continue performance that requires an expenditure of funds in excess of funds transferred under the Funding Agreement. If at any time the Tribe has reason to believe that the total amount provided for a specific activity in the Funding Agreement is insufficient the Tribe shall provide reasonable notice of such insufficiency to the Secretary. If the Secretary does not increase the amount of

Pechanga Band of Indians
Compact of Self-Governance

funds transferred under the Funding Agreement, the Tribe may suspend performance of the activity until such time as additional funds are transferred.

     **Section 19 – Cost Sharing.**  In determining eligibility for services, the Tribe shall comply with applicable eligibility provisions set forth in the IHCIA, as amended, applicable regulations and other statutory law.  In no event shall the amounts negotiated into an FA be offset or reduced by reason of any fee-for-service funds collected by the Tribe for services to non-beneficiaries.  Services may be provided to individuals who are otherwise non-beneficiaries on a fee-for-service basis in accordance with and subject to the provisions of Section 813(c) of the IHCIA, as amended.

     **Section 20 – Eligibility; Charges.**  The Tribe may elect to charge eligible Indian beneficiaries for services per 25 U.S.C. Section 1680r.  The Tribe may elect to provide health care services to ineligible persons on a fee for service basis in accordance with the requirements of 25 U.SC. § 1680c, and in doing so "shall take into account the consideration described in [25 U.S.C. Section 1680c(c)] paragraph (1)(B)." Ineligible persons shall be billed for services when the Tribe determines (based on these considerations) that such services could otherwise result in a denial or diminution of health services to eligible Indians.    The Tribe has provided a resolution to provide medical services to ineligible persons pursuant to 25 U.S.C. § 1680c to IHS.

### Article III - Obligations of the Tribe

     **Section 1  – Consolidation.**  With the exception of the specific responsibilities of the United States identified and retained in Article IV, Section 2, the Tribe will perform the programs, activities, functions and services as provided for in the Funding Agreement, as provided for in Article VI, Section 2 of this Compact.

     **Section 2 – Amount of Funds.**  The total amount of funds covered by the consolidation and redesign provided for in Section I of this Article that the Secretary or an authorized representative shall make available to the Tribe shall be determined in accordance with Section 508(c) of Title V (25 U.S.C. § 5388(c)) and shall be set forth in the Funding Agreement between the Secretary and the Tribe, which shall be incorporated in its entirety into this Compact and attached hereto, as provided for in Article VI, Section 2.

     **Section 3 – Tribal Programs.**  The Tribe agrees to provide such programs, activities, functions and services that are identified in the Funding Agreement.  The Tribe pledges to practice good faith in upholding its responsibility to provide such programs, activities, functions and services.

     **Section 4 – Reallocation.**  In accordance with Section 506(e) of Title V (25 U.S.C. § 5386(e)), the Tribe may redesign or consolidate programs, services, functions, and activities (or portions thereof) included in the Funding Agreement and reallocate and redirect funds for such programs, services, functions and activities (or portions thereof) in any manner which the Tribe deems to be in the best interest of the health and welfare of the Indian community being served,

Page 10

Pechanga Band of Indians
Compact of Self-Governance

only if redesign or consolidation does not have the effect of denying eligibility for services to population groups otherwise eligible to be served under applicable Federal law.

The Tribe's use of funds under this Compact and Funding Agreement shall be subject to specific directives or limitations as may be included in applicable Congressional Appropriations Acts.

**Section 5 – Medicare/Medicaid and Other Reimbursement Funds.** All Medicare, Medicaid and other reimbursement fund collected by the Tribe shall be treated as additional supplemental funding to that negotiated in the Funding Agreement, and the Tribe may at its option retain all such Medicare, Medicaid and other reimbursement funds and either expend them according to a plan adopted by the Tribe or carry them forward for expenditure in succeeding years. In no event shall the amounts negotiated into any Funding Agreement be offset or reduced by reason of Medicare, Medicaid and other reimbursement funds collected by the Tribe. Program income and third party revenue may be used for any purpose permitted under 25 U.S.C Section 1641

**Section 6 – Matching Funds.** Funds may be used to meet matching and other cost participation requirements under any other federal or non-federal programs, pursuant to Section 512(d) of Title V (25 U.S.C. § 5392(d)).

## Article IV - Obligations of the United States

**Section 1 – Trust Responsibility.** The United States reaffirms its trust responsibility to the Tribe to protect and conserve the trust resources of the Tribe and of individual Indians in the Service Area. The role and responsibility of the IHS, as defined by the Snyder Act and the Indian Health Care Improvement Act, as amended, and the Tribe is to promote the health, welfare and social well being of Indian people. In accordance with Sections 507(g) and 515(b) of Title V (25 U.S.C. §§ 5387(g) & 5395(b)), nothing in this Compact is intended to, nor should be interpreted, to terminate, waive, modify or reduce the Trust responsibility of the United States to the Tribe or individual Indians that exists under treaties, Executive Orders, other laws, or court decisions. The Secretary pledges to practice utmost good faith in upholding said trust responsibility. Pursuant to Section 515(c) of Title V (25 U.S.C. § 5395(c)), the IHS shall neither bill nor charge those Indians who may have economic means to pay for services, nor require the Tribe to do so.

**Section 2 – Programs Retained.** As specified in the Funding Agreement, the United States hereby retains the programs, services, functions and activities with respect to the Tribe that are not specifically assumed by the Tribe or a Tribal Organization authorized by the Tribe and it shall be entitled to the full benefit of those programs, services, functions and activities retained by the IHS. In accordance with Section 506(h) of Title V (25 U.S.C. § 5386(h)), the Tribe shall be eligible for new programs, services, functions and activities of the Secretary and IHS on the same basis as other Tribes and Tribal organizations. The IHS, in consultation with the Tribe, may reorganize to sustain its ability to provide, in the most effective and efficient

Page 11

Pechanga Band of Indians
Compact of Self-Governance

manner, all programs, services, functions and activities that have not been included in the Funding Agreement(s).

        (a)    Programs retained by the Secretary, except those residual functions identified in the Funding Agreement(s), are retained based on the agreement of the Tribe, and the Tribe retains the right to assume all or part of such programs, services, functions and activities at its option, subject to the provisions of Section 102(a) of the ISDEAA (25 U.S.C. § 5321(a)); and

        (b)    Upon written notice by the Tribe of its desire to assume retained programs, described under subsection (a) above, the Secretary shall take necessary actions to transfer all property and resources associated with such retained programs as expeditiously as possible.

**Section 3 – Financial and Other Information.** The Tribe shall be eligible for new programs, functions, services and activities on the same basis as other tribes, and the Secretary or an authorized representative shall advise the Tribe of the funding available for such programs. To assist the Tribe in monitoring compliance with Section 508(c) of Title V (25 U.S.C. § 5388(c)), the United States, upon request, shall provide information which the Tribe is permitted under applicable law to request, with responses made as expeditiously as possible.

**Section 4 – Disasters and Emergencies.** The United States will maintain the Tribe's eligibility for special disaster relief and assistance programs as the same may from time to time become available, and shall retain responsibility to assist the Tribe in responding to natural or other disasters, emergencies, and acts of God as permitted under relevant authorities and/or applicable appropriations acts.

**Section 5 – Access to Indian Health Service Support Programs, Services and Facilities.** The United States will maintain the Tribe's eligibility for, and equal access to, all Department of Health and Human Services and other federal agency grants, programs, services and facilities which would otherwise be used by the Indian Health Service Director to serve or support the Tribe's service population as if the Tribe's Compact operations were an integral part of the Indian Health Service. In particular, the United States will maintain the Tribe's eligibility for benefits from special arrangements for physician and other medical professional recruitment and assignment with affiliates of the American Medical Association, National Health Service Corps and other organizations and with the USPHS Commissioned Corps, Civil Service or other federal employees.

**Section 6 – Extraordinary and Unforeseen Events.** The parties agree that this Compact is intended to obligate the Tribe to carry out all usual and ordinary functions respecting the programs for which it is undertaking to assume responsibility pursuant to this Compact and successor Funding Agreements. The parties further agree that in the event there occur major unforeseen or extraordinary events, as jointly identified by the Tribe and the Secretary, with cost consequences beyond the control of the Tribe, that the Tribe will have access to additional

Pechanga Band of Indians
Compact of Self-Governance

services and funding amounts to deal with the unforeseen circumstance to the same extent that such additional services and funding would have been available to non-compacting Tribes or an Indian Health Service provider had they encountered a similar circumstance. In particular, the parties intend that the Tribe shall have the right to participate in or utilize the Indian Health Service emergency fund, supplemental appropriations, reprogramming or reallocation to cover shortfalls in contract health care funds and other Indian Health Service "emergency" funds of any kind, nature or category whatsoever, all to the same extent that the Tribe would have had access to such additional funds if it were not a Self-Governance Tribe.

**Section 7 – Federal Tort Claims Act/Insurance.** The following provisions apply to the coverage of the Tribe and its employees functioning under this Compact:

(a)     The Tribe and its employees performing programs, functions, services and activities under this Compact and the associated Funding Agreement are, by statute, deemed to be part of or employed by the Public Health Service, for purposes of coverage under the Federal Tort Claims Act, while performing programs, functions, activities or services under this Compact and any applicable Funding Agreement, including coverage for claims of medical malpractice, as required by Section 516(a) of Title V ((25 U.S.C. § 5396(a)) and section 102(d) of the Indian Self-Determination Act (25 U.S.C. § 5321(d)), as amended.

(b)     Subject to the foregoing, an employee's status as an employee of the Tribe performing programs, functions, services and activities under this Compact and the associated Funding Agreement is not affected by the source of the funds used to pay the employee's salary and benefits as long as the employee does not receive any additional compensation for the performance of covered services from anyone other than the Tribe.

(c)     The employee may, while performing under this Compact and the associated Funding Agreement and as a condition of employment, be required by the employer to provide services to persons who are not "eligible" as that term is defined in section 813(e) of the Indian Health Care Improvement Act, as amended, 25 U.S.C. § 1680c(e), in order for the Tribe to meet its obligations under this Compact and the associated Funding Agreement, either in the Tribe's facilities or facilities other than those of the Tribe. In providing such services, the employee shall be covered under the Federal Tort Claims Act.

(d)     Funds provided under the Funding Agreement(s) may be used to purchase such additional liability and other insurance as is prudent in the judgment of the Tribe performing under this Compact and the associated Funding Agreement(s) for its protection and the protection of its employees. This provision is authorized by 25 U.S.C. § 25 U.S.C. § 5325(k)(8) made applicable hereto pursuant to § 516(b) of Title V (25 U.S.C. § 5396(b)).

Page 13

Pechanga Band of Indians
Compact of Self-Governance

Purchase of any such liability insurance by the Tribe shall not be construed as a waiver of sovereign immunity from civil lawsuits.

(e)     Except as otherwise provided by law, nothing in this Compact shall either enhance or diminish the liability of the United States for any claims arising prior to the effective date of this Compact.

(f)     Personal services contracts shall be covered under this provision to the extent authorized under section 102(d) of the Indian Self-Determination and Education Assistance Act 25 U.S.C. § 5321(d), as amended.

**Section 8 – Federal Insurance.** IHS will assist the Tribe to obtain information about the coverage, rights, and benefits available for its employees under chapters 87 and 89 of title 5, United States Code, the cost of such coverage, rights and benefits (including any options in coverage, rights and benefits that may be available), and the procedures by which the Tribe may exercise its rights under IHCIA section 409, as amended, to have such access to such Federal insurance for its employees.

**Article V - Other Provisions**

**Section 1 -- Designated Officials.** The Director of the Office of Tribal Self-Governance, Office of the Director of the Indian Health Service, is designated as the United States representative/liaison official for notices, proposed amendments to the Compact and other purposes under this Compact. The Tribe may designate authorized officials to act on behalf of the Tribe for purposes of this Compact by Tribal Council Resolution. Except as delegated by Council Resolution, the Chairman of the Tribal Council shall be the Tribe's official representative/liaison for notices, proposed amendments to the Compact and other purposes for this Compact.

**Section 2 – Indian Preference in Employment, Contracting and Subcontracting.** Tribal law shall govern the provision of Indian Preference in Employment, Contracting, and subcontracting pursuant to this Compact.

**Section 3 – Compact Modifications or Amendments.** To be effective, any modifications of this Compact shall be in the form of a written amendment to the Compact, and shall require the written consent by authorized signatories of the Tribe and the Secretary.

**Section 4 – Interpretation of Laws and Regulations.** Except as otherwise provided by law, in the implementation of this Compact, the Secretary shall interpret Federal laws and regulations in a manner that facilitates this Compact in accordance with Section 512(a) of Title V (25 U.S.C. § 5392(a)).

Pechanga Band of Indians
Compact of Self-Governance

**Section 5 – Officials Not to Benefit.** No member of or delegate to the U.S. Congress, or resident commissioner, shall be admitted to any share or part of any contract executed pursuant to this
Compact, or to any benefit that may arise therefrom; but this provision shall not be construed to extend to any contract with a third party entered into under this Compact if made with a corporation for its general benefit.

**Section 6 – Covenant Against Contingent Fees.** The parties warrant that no person or selling agency has been employed or retained to solicit or secure any contract executed pursuant to this Compact upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained by the contractor for the purpose of securing business. For breach or violation of this warranty the Government shall have the right to annul any contract without liability or in its discretion to deduct from the contract price or consideration, or otherwise recover, the full amount of such commission, percentage, brokerage, or contingent fee.

**Section 7 – Penalties.** The parties agree that the criminal penalties set forth in 25 U.S.C. §5306 apply to all activities conducted pursuant to this Compact.

**Section 8 – Construction.** To the extent permitted by law, and according to terms of applicable appropriations acts and other relevant authority, this Compact shall apply to funds included in the facilities accounts of the Indian Health Service appropriations.

**Section 9 – Sovereign Immunity.** Nothing in this Compact or in any FA shall be construed to affect or waive the sovereign immunity of the Tribe, except with regard to the United States under this Agreement to the extent necessary to implement this Compact, or as otherwise provided by federal law.

**Section 10 – Severability.**

    (a)    Except as provided in this section, this Compact shall not be considered invalid, void or voidable if any section or provision of this Compact is found to be invalid, unlawful or unenforceable by a court of competent jurisdiction.

    (b)    If any section or provision of this Compact is found to be invalid, unlawful or unenforceable by a court of competent jurisdiction, the parties will seek agreement to amend, revise or delete any such invalid, unlawful or unenforceable section or provision, in accordance with the provisions of this Compact.

**Section 11 – Inclusion of Grants.** The parties agree that Section 505(b) of Title V (25 U.S.C. § 5385(b)) provides, among other things, that grants administered by the U.S. Department of Health and Human Services (DHHS) through the IHS may be added to the Tribe's Funding Agreement after award of such grants. However, the Tribe must comply with all terms and

Pechanga Band of Indians
Compact of Self-Governance

conditions of the grant award, including reporting requirements, and cannot reallocate grant funds or redesign the grant program.

**Section 12 – Contract Disputes Act.** The Tribe retains the right to enforce this Compact and any Funding Agreement under the Contract Disputes Act.

## Article VI – Attachments

**Section 1 – Approval of Compact.** The resolution of the Pechanga Band of Indians approving this Compact is attached hereto as Attachment 1.

**Section 2 – Funding Agreement.** The negotiated and duly approved Funding Agreement(s) with respect to the Pechanga Band of Indians identifying those programs, functions, services, and activities, to be performed, and the funds to be provided, is hereby incorporated in its entirety in this Compact and attached hereto as Attachment 2.

DATED THIS __ DAY OF _____, 2025.

**Pechanga Band of Indians**

BY _____
Mark Macarro, Chairman
Pechanga Band of Indians

**United States of America**
**Department of Health and Human Services**
**Indian Health Service**

BY _____
Benjamin Smith, Acting Director
Indian Health Service

Page 16

# Exhibit B

MULTI-YEAR FUNDING AGREEMENT
BETWEEN THE
PECHANGA BAND OF INDIANS
AND THE
UNITED STATES OF AMERICA
FOR THE PERIOD
THROUGH DECEMBER 31, 2030

This Funding Agreement is entered into by and between the Pechanga Band of Indians ("Tribe") and the Secretary of Health and Human Services of the United States of America.

**Section 1 – Obligations of the Indian Health Service.** This Multi-Year Funding Agreement ("Agreement" or "MYFA") obligates the Indian Health Service ("IHS") to provide funding and services identified herein for the period from the Effective Date through December 31, 2030, and as provided in the Compact of Self-Governance between the Pechanga Band of Indians and the United States. This MYFA is a multiple year Funding Agreement, negotiated in accordance with Section 505 of Title V of the Indian Self-Determination and Education Assistance Act ("ISDEAA"), 25 U.S.C. Section 5388(b).

**Section 2 – Obligations of the Tribe.** This Agreement obligates the Tribe to be responsible for and to provide health programs, services, functions, and activities (PSFAs) identified in section 3, utilizing the resources transferred under this Agreement. This Agreement further authorizes the Tribe to consolidate and redesign PSFAs as provided in the ISDEAA and the Compact, 25 U.S.C. Section 5386(e).

**Section 3 – Tribal Health Programs and Budget Structure.** The Tribe agrees to provide the PSFAs as listed below for the periods covered by this Agreement, subject to its rights under ISDEAA including its right to reprogram PSFAs in accordance with Section 506(e) of the ISDEAA (25 U.S.C. § 5386(e)) or to suspend performance that requires expenditure of funds in excess of the amount of funds provided under this Agreement in accordance with Section 508(k) of the ISDEAA (25 U.S.C. § 5388(k)). Funding for the PSFAs assumed by the Tribe is identified and detailed in Appendices to this Agreement, which may be updated for fiscal years covered by this Agreement. The Tribe is committed to and shall provide quality health services that will at all times meet applicable standards. To the extent the PSFA descriptions in the Compact or Funding Agreement conflict with descriptions or definitions provided in the Indian Health Care Improvement Act ("IHCIA"), as amended, the terms of the IHCIA shall prevail unless they conflict with the ISDEAA.

For purposes of this MYFA, the Tribe will assume the following PSFAs:

(a)     Opioid Treatment and Wellness Center:  The Tribe will operate a clinic (currently known as Harmony Health Clinic) to provide addiction services and treatment to members of the

Tribe as well as other Native Americans, and to non-Native patients including those served by Medicaid, in accordance with and subject to the provisions of Section 813(c) of the IHCIA, as amended, and the Resolution of the Tribe attached here to Exhibit A, provided that the Tribe finds that the provision of direct care health services to ineligible individuals will not result in a denial or diminution of health services to eligible Indians. The clinic will provide integrated, whole-person or "wrap around" outpatient treatment services for patients diagnosed with opioid use disorder or substance use disorder (OUD/SUD). Clinic services will consist of medication-assisted treatment, including licensed narcotic treatment program (NTP) services (including methadone), as well as buprenorphine and other medications as prescribed. In addition, the clinic will offer physical medicine (including primary care and urgent care) and mental health services (including addiction counseling, psychotherapy, and psychiatry), each of which is to be offered to patients enrolled in the NTP program. The clinic will also offer screening, evaluation, group and individual counseling, referral to community resources, and assisting clients in locating and utilizing other resources, such as housing, transportation, and childcare. The clinic will include a comprehensive, culturally appropriate, prevention and treatment program for OUD/SUD patients and individuals with other addictive behaviors.

(b)    PRC Coordination Services: The Tribe will provide administrative functions needed to coordinate purchased/referred care ("PRC") services with the Tribe's self-insurance programs, including determinations of medical necessity, confirmation of eligibility, referrals, authorizations, and payment of PRC eligible claims through self-insurance, in accordance with 42 CFR 136.24 and 136.30. PRC may be purchased or paid for through a tribally owned and operated health care plan, a state or locally authorized or licensed health care plan, an health insurance provider or managed care organization, a self-insured plan, or a high deductible or health savings account plan, per 25 U.S.C. § 1642(a), or any combination thereof. In the case of a self-insured plan, PRC funds may also be used for expenses of operating the plan, including administration, and insurance to limit the financial risks of the entity offering the plan. 25 U.S.C. § 1642(c). The Tribe is only withdrawing a portion of PRC funds from Riverside - San Bernardino County Indian Health, Inc. ("RSBCIHI") and anticipates continued participation for direct care and PRC services as separately funded through the Tribe's continued participation in RSBCIHI. The following additional provisions shall apply:

i    The Tribe may require payment of PRC primary to its self-insurance program per 25 U.S.C. Section 1623(b) and 25 U.S.C. Section 1621e(f).

ii.    The Tribe may pay PRC and self-insurance claims through a third-party claims administrator / fiscal intermediary, through a network, or via electronic or batch processing of payments without impairing the status of an otherwise valid PRC obligation for purposes of PRC and/or CHEF.

Page **2** of **12**

    iii.    The Tribe is not required to secure stop loss or reinsurance that covers PRC or CHEF eligible claims.

    iv.    The Tribe retains its right to Medicare-like rate (MLR) discounts for all PRC and other health services provided hereunder per Section 506 of the Medicare Prescription Drug, Improvement, and Modernization Act, and Pharmacy discounts to the extent permitted under Section 340B of the Public Health Service Act.

(c)    <u>Redesign; Other Health Related Services, to the extent not inconsistent with ISDEAA.</u> The Tribe may redesign and/or discontinue existing services and/or provide additional PSFAs as are approved by the Tribe in accordance with Section 506(e) of the ISDEAA (<u>25 U.S.C. § 5386(e)</u>) and not otherwise inconsistent with ISDEAA.

**Section 4 – Management, Administration and Location of PSFAs**

(a)    Overall management and administration, and coordination of the PSFAs are provided by the Tribe, which shall retain a manager or director who is responsible for the day to day management and administration of the PSFAs according to policies and procedures established by the Tribe.  Through delegations to appropriate department heads and other Tribal employees, the Tribe is responsible for all financial, facilities and clinical engineering, personnel, property and supply, housekeeping, employee health and infection control, business office, quality improvement and compliance functions, safety and security services, and information and telecommunications management.

(b)    The Tribe reserves the right to establish a separate tribal controlled entity to operate the opioid treatment and wellness center.  If a separate entity is established, the Tribe shall remain responsible to ensure that all requirements of the compact and this MYFA are met.

(c)    The Tribe may provide the PSFAs described herein through Tribal employees or other individuals through personal services agreements, and/or through other contractual arrangements with providers, plans or provider networks.

(d)    The Tribe may utilize volunteers and/or students to assist and observe the Tribe in providing PSFAs described herein.

(e)    The initial opioid treatment and wellness center location is 304 and 305 East 4th Street, Perris, CA 92570, Riverside County.

The Tribe may open additional locations for its opioid treatment and wellness center which will be located within the Tribe's reservation lands, within Riverside County, <u>or within San Bernardino County</u>.

The Tribe will construct a new facility at its own cost, but reserving the ability to seek Section 105(l) lease funding.

## Section 5 – Services to Non-Indians and Charges for Services; Supplemental Funding.

(a)     The Tribe is authorized to provide health services to ineligible persons and to charge Indians and non-Indians for services in accordance with applicable federal law including <u>25 U.S.C. § 1680r(a)</u> and <u>25 U.S.C. § 1680c</u>.

(b)     The Tribe has the right to directly bill for, and receive payment for, health care items and services provided by such program for which payment is made through Medicare/Medicaid or from other third party payors per <u>25 U.S.C. § 1641(d)</u> as well as other recoveries through <u>25 U.S.C. § 1621</u>e. The Tribe has elected to directly bill and collect Medicare and Medicaid payments, as well as payments from other third party payors as provided in <u>25 U.S.C. §§ 1641</u> and <u>1621</u>e, as amended.  The Tribe is required to bill for services to ineligible persons to the extent required for compliance with <u>25 U.S.C. § 1680c(c)</u>.  All third party billings (including Medicare and Medicaid) and other program income earned by the Tribe shall be treated as supplemental funding to that negotiated in the MYFA. The Tribe may retain all such income and expend such funds in the current year or in future years except to the extent that the IHCIA, as amended (<u>25 U.S.C. § 1601</u> *et seq.*) provides otherwise for Medicare and Medicaid receipts.  As applicable, the use of program income shall comply <u>25 U.S.C. §§ 5325(m)</u> and <u>1641(d)</u>. Such funds shall not result in any off-set or reduction in the amount of funds the Tribe is authorized to receive under its MYFA in the year the program income is received or for any subsequent Fiscal Year.  Third party revenues / program income may be used for any purpose permitted under <u>25 U.S.C. § 1641</u>.

(c)     The Tribe may negotiate individual reimbursement rates and arrangements, or memorandums of agreement, with State, local, and other tribal programs, and with networks, providers, insurance programs and self-insurance programs for the provision of services herein.

(d)     Third party revenues shall be treated as supplemental funding under this MYFA.

## Section 6 – Amounts Available for the Fiscal Years and Other Funding Periods Covered Under the MYFA.

(a)    **Base Funding.** The annual amount available each Fiscal Year to the Tribe for the PSFAs called for herein shall be set forth in Exhibit B to this agreement. The dollar amount will be consistent with withdrawal resolutions approved by the Tribe and presented to IHS. The dollar amounts will be adjusted to reflect the actual effective date of the Compact and Funding Agreement. Dollar amounts may be adjusted for future Fiscal Years or other periods covered by this Agreement, and is subject to reduction only in accordance with Section 106 of the ISDEAA (25 U.S.C. § 5325) during the term of this MYFA.

(b)    **Mandatories and Other Increases.** The Tribe shall also be eligible for new services increases, program increases, mandatory increases, population growth increases, health services priority system increases, and contract support costs and other non-recurring funds that have historically been distributed as non-recurring funds under Title I of the ISDEAA, as amended. The Tribe will also be eligible for reimbursement for special pay, change of station, continuing education, and qualifying catastrophic cases (including reimbursement from the catastrophic health emergency fund ("CHEF") pursuant to 25 U.S.C. Section 1621a) on the same basis as other tribes and service units. Once determined, the Tribe's share of mandatories and any other funding for which the Tribe is eligible will be provided as an amendment to this MYFA.

(c)    **Residuals.** Residuals are defined as those PSFAs necessary for the United States government to fulfill and maintain its moral and legal responsibilities based upon treaties, statutes, and Executive Orders that must be carried out by Federal officials. Funding for Residual PSFAs shall not be transferred to the Tribe under this MYFA.

(d)    **No Waiver.** Nothing herein shall be construed to waive the Tribe's right to seek additional funding it may be entitled to at law, whether base, CSC, or otherwise.

**Section 7 – Terms and Conditions of Stable Base Funding.** The parties agree to stable base funding, based on the following terms and conditions:

(a)    **Duration.** The recurring base budget funding level amounts identified herein shall be available subject to the terms and conditions of relevant Congressional Appropriations Acts and continuing resolutions. It is the intent of the IHS and the Tribe to use as the recurring base funding the final reconciliation amounts established for FY 2025 as the starting point for the subsequent fiscal year negotiations.

(b)    **Adjustments to Recurring Base Funding Level.** For subsequent funding periods, the recurring base budget amount shall also include any mandatory or inflationary adjustments contained within the annual proposed IHS Budget Justification and subsequent Congressional Appropriations. For each subsequent annual fiscal year negotiation throughout the Term, the base funding levels will be adjusted in direct proportion to the increase or decrease in PSFA levels of Congressional funding, excluding Congressional earmarks for each sub-sub activity. The establishment of the recurring stable base budget amount as defined herein, does not preclude the Tribe from including PSFAs which have not been previously included under this MYFA.

(c)    **User Population Calculations.** The funding levels heretofore enumerated shall remain constant within the Term and subject to the foregoing conditions regardless of any changes in the Tribe's user population. The Tribe agrees to provide to the IHS the number of users served by the Tribe, and verified by the IHS, for each fiscal year of the Term based on a mutually determined method which may be used for the purpose of allocating new funding increases appropriated by Congress.

## Section 8 – Programs, Functions, Services and Activities Retained by the Indian Health Service.

Any PSFA not specifically compacted by the Tribe or a part of RSBCIHI, due to: (1) a decision by the Tribe to leave the program with IHS or RSBCIHI; (2) an omission on the part of IHS resulting in the program not being made available for the Tribe to compact; (3) a determination that the program is made available on the basis of competition or another basis, or (4) the program is considered a part of the Indian Health Service residual functions; shall be assumed to be the responsibility of the Indian Health Service unless additional funds are provided, to the Tribe by amendment to this Agreement. The Tribe retains the right to negotiate further during the term of this agreement to assume responsibility for additional PSFAs from either IHS or RSBCIHI.

The specific amounts of funds retained by IHS and RSBCIHI for these PSFAs are identified in attachments to this MYFA, as the same may be amended.

**Section 9 – Contract Support Funding.**    Contract support costs (CSC) will be paid in accordance with 25 U.S.C. § 5325 [and § 5388 (c)]. The parties agree that, according to the best data available as of the date of execution of this agreement, the amount to be paid for the Fiscal Years covered by this agreement, represents the parties' estimate of the Tribe's full CSC requirement pursuant to 25 U.S.C. § 5325 is $2,077, including $0 for direct CSC and $2,077 for indirect/indirect-type CSC.  This estimate shall be recalculated as necessary as additional data becomes available including information regarding the direct cost base, pass throughs and exclusions, and the indirect cost rates to reflect the full CSC required under 25 U.S.C. § 5325, and, to the extent not inconsistent with the ISDEAA, as specified in IHS Manual Part 6, Chapter 3.  The parties will cooperate in updating the relevant data to make any agreed upon adjustments.  In the event the parties disagree on the CSC amounts estimated and paid pursuant to this paragraph and the Tribe's full CSC requirement under the ISDEAA, the parties may pursue any remedies available to them under the ISDEAA, the Compact, and the Contract Disputes Act, 41 U.S.C. § 7101 *et seq.*

**Section 10 – Federal Tort Claims Act**. The Tribe and its employees, as well as persons providing services under a personal services agreement ("PSA"), shall be covered by the Federal Tort Claims Act (FTCA) to the fullest extent permitted at law.  Although the Tribe may engage in traditional health care practices, pursuant to 25 U.S.C. § 1680u the United States is not liable for any provision of traditional health care practices that results in damage, injury, or death to a patient.  Without limiting the foregoing, employees and individuals providing services under a PSA are deemed to

be part of or employed by the federal government for purposes of coverage under the FTCA while carrying out statutorily mandated grants and providing PSFAs within the scope of work set forth in this FA. FTCA coverage is not affected by the source of funds used by the Tribe to pay for the PSFA or the individual's compensation. Funds provided under this MYFA may be used to purchase such additional liability and other insurance as is prudent to the judgment of the Tribe performing under this MYFA for its protection and the protection of its employees.

**Section 11 – Method of Payment.**

    (a)    **Payment Schedule.** Except as provided in subsections (b) and (c) of this section, all funds identified in section 6 of this Agreement shall be paid to the Tribe on February 01, of the applicable year (the Effective Date for the initial year), or 10 days after the apportionment of such funds by the Office of Management and Budget, if later, in one lump sum payment to be made annually in advance by wire transfer. In the event of Congressional Continuing Resolutions, IHS and the Tribe agree that payment shall be made as expeditiously as possible, pursuant to the terms of the language contained in the Continuing Resolutions.

    (b)    **Periodic Payments.** Payment of funds otherwise due the Tribe under this Agreement, which are added or identified after the initial payment is made, shall be made promptly by electronic transfer.

    (c)    **Payment of Interest on Late Payments.** Interest will be paid on late payments in accordance with the provisions of the Prompt Payment Act.

**Section 12 – Special Earmarked Programs, Services and Functions.** The Tribe is not authorized under this Funding Agreement to redesign or to shift or transfer any of the funding for any programs, services and functions which are subject to special restrictions imposed by appropriations Acts. Funds available to the Tribe, which are determined by competition or other formulas, which are not subject to prediction until after the Funding Agreement has been signed, will be provided in amounts as calculated. The Tribe retains the right to identify other IHS program services during the effective period of this Funding Agreement, which it desires to provide, including Headquarters programs. If the Tribe's proposal is agreed to, such services and funding to provide such services shall be added to this Funding Agreement.

**Section 13 – No Reduction in Programs, Services to Other Tribes.** Nothing in this Funding Agreement is intended to diminish any PSFAs to other tribes.

**Section 14 – Construction Accounts.** Any funds included within this Funding Agreement that are included within any Congressional appropriations that are earmarked for construction purposes must be used by the Tribe for construction purposes and the related activities of planning, engineering and design.

**Section 15 – Adjustment Due to Congressional Actions.** The parties to this Funding Agreement recognize that the total amount of the funding in this Agreement is subject to adjustment due to Congressional action in appropriations Acts or other laws affecting availability of funds to the

Indian Health Service and the Department of Health and Human Services. Upon enactment of any such Act or law, the amount of funding provided to the Tribe in this Agreement shall be adjusted as necessary after the Tribe has been notified of such pending action and subject to any rights which the Tribe may have under this Agreement, the Compact, or the law.

**Section 16 – Headquarters and Area Responsibilities.** Unless funds are specifically provided from Indian Health Service Headquarters or the Area Office, the Indian Health Service retains those PSFAs and the Tribe, its members, and the Tribe's service population will not be denied access to, or services from, Indian Health Service Headquarters or the Area Office.

**Section 17 – Access to Emergency Funds.** If an unexpected medical occurrence such as an epidemic or a natural disaster occurs, the Tribe will have access to Emergency Funds in the same manner and to the same extent the Tribe would have received such funds if it were not a Self-Governance Tribe.

**Section 18 – Access to Training.** The Tribe will have access to training and continuing education in the manner and to the same extent the Tribe would have received such training if it were not a Self-Governance Tribe, provided these are included in the residual functions or reserves and budgets from which the Tribe has not taken its share under this Funding Agreement.

**Section 19 – Access to Technical Assistance.** The Tribe shall have access to technical assistance in the manner and to the same extent the Tribe would have received such technical assistance if it were not a Self-Governance Tribe, provided this is included in the residual functions or reserves and budgets from which the Tribe has not taken its share under this Funding Agreement.

**Section 20 – Access to Federal Sources of Services and Supply.** The California Area Office shall issue a letter to the Tribe confirming the Tribe's eligibility to access Federal sources of services and supplies on the same basis as an executive agency of the United States, and the Indian Health Service shall assist the Tribe in accessing such sources, including air carriers.

**Section 21 – Automated Data Processing.** The Tribe will continue to have access to Indian Health Service electronic data processing systems to assure that tribal population registration data is provided to maintain the Indian Health Service population database for calculation of various funding distribution formulas and to support the justification for the annual Indian Health Service appropriation.

The Tribe will continue to provide health services workload data on a monthly basis by submission of an electronic file in a format compatible with the Resource and Patient Management System database in accordance with the method as mutually agreed upon by the parties. The Tribe will submit the electronic file to the California Area Office as an e-mail attachment. The Area Office will acknowledge receipt of the file. The Indian Health Service will continue to process and maintain statistical information of the Tribe program for aggregation at the Area and national level.

**Section 22 – Carryover of Funds of Prior Agreements.** Any savings of funds available to the Tribe under its predecessor Indian Self-Determination Act Contracts or Compacts and Funding Agreements shall be added to this Agreement and shall remain available until expended.

**Section 23 – Property; 105(l) Leases.**

(a)     **Title.** The Tribe shall retain title to all property purchased with funds provided under this Agreement in accordance with the provisions of Section 17, Article II of the Compact and Section 105(f)(2) of the ISDEAA, 25 U.S.C. § 5324(f)(2), as amended.

(b)     **Replacement.** The Tribe shall be eligible for replacement of equipment used in connection with the Compact and this Agreement on the same basis as the Indian Health Service, as if the Indian Health Service were operating the compacted programs. This paragraph shall not apply to the extent the Tribe's Headquarters share includes equipment replacement funds.

(c)     **105(l) Lease Provisions.** Upon the request of the Tribe, IHS shall enter into a lease or leases with the Tribe for facilities that the Tribe holds title to, a leasehold interest in, or a trust interest in, and are used by the Tribe for the administration and delivery of PSFAs. The Tribe and IHS will negotiate funding levels for such leases under ISDEAA Section 105(l), 25 U.S.C. Section 5304(l), and such leases may be incorporated into this FA.

**Section 24 – Amendment or Modifications of this Agreement.**

(a)     **Form of Amendments.** Except as otherwise provided by this Agreement, the Compact, or by law, any modification to this Agreement shall be in the form of a written amendment and shall require written consent of the Tribe and the United States.

(b)     **Services from IHS.** Should the Tribe determine that they wish the Indian Health Service to provide PSFAs included in this MYFA for which funding has been identified but not provided, the parties shall negotiate an amendment to the MYFA to reflect the transfer of responsibilities from the Tribe back to the IHS and the pro-rata share of funding, if any, for that PSFA shall be retained by the IHS.

(c)     **Due to Addition of New Programs.** Should the Tribe determine that they wish to provide a PSFA of the IHS not included in this MYFA, the Tribe shall submit an amendment request or negotiate with the Indian Health Service to provide such PSFA. Proposals submitted pursuant to this section shall be treated as a request for amendment to the MYFA and, once approved by the IHS, or if not otherwise timely rejected by IHS, shall be added to the MYFA by amendment. The Tribe is eligible to receive available funding associated with the assumption of a new PSFA. An amendment shall not be required for reprograming of existing funds among existing PSFAs or to new PSFAs.

(d)     **Due to Availability of Additional Funding.** The Tribe shall be eligible for any increases in funding for new programs to which they would have been eligible had

they been administering programs under a self-determination contract, rather than under the Compact and this Agreement, and for any other funds that are not restricted by appropriations language for which any tribe or tribal organization may be eligible, including any new funds appropriated for Indian Health Service Headquarters and funds passed to the California Area as recurring or non-recurring funds, and this Agreement shall be amended to provide for timely payment of such new funds to the Tribe.

(e)     **Changes in Actual Appropriation Levels and Increases of Funding.** Written consent of the Tribe shall not be required for issuing amendments, which result from increases in actual appropriations, levels or which represent an increase in funding for PSFAs identified in this Agreement. Such increases include, but are not limited to: mandatory increases, end-of-year distributions of funds, and CHEF reimbursements.

(f)     **Other Changes.** The Tribe may request other changes, including optional changes not required by law, at any time while this Agreement is in force.  The United States shall work with the Tribe in good faith to review such requested changes and shall provide the Tribe with technical assistance for any such amendments or changes including such assistance set forth in Section 507(c)(1)(B) of the ISDEAA (25 U.S.C. § 5387(c)(1)(B)).

## Section 25 – Administrative Notifications.

(a)     **Name and Address of Tribe:**
Pechanga Band of Indians
12705 Pechanga Road
Temecula, California 92592
(951) 770-6000

(b)     **Federal Payment Office:**
California Area Indian Health Service
650 Capital Mall, Suite 7-100
Sacramento, CA 95814
(916) 930-3927

(c)     **Catalog of Federal Domestic Assistance No.:** 93.210

(d)     **HHS Administrative Code:** ISG93

## Section 26 – Severability.

(a)     This Agreement shall not be considered invalid, void or voidable if any section or provision of this Agreement is found to be invalid, unlawful or unenforceable by a court of competent jurisdiction.

(b)     In the event of such finding, and the belief by either party that it will work a hardship upon them, the parties will negotiate an amendment to this agreement.

**Section 27 – Title V Regulations.** The Title V Regulations (42 C.F.R. Part 137) shall apply to this Funding Agreement unless the Tribe submits and is granted a request for waiver in accordance with the procedure set forth in Section 512(b) of Title V (25 U.S.C. § 5392(b)) and the Title V implementing regulations.

**Section 28 – Exemptions from IHS circulars, policies, manuals, guidance and rules; Updates for PRC Manual Changes.** The Tribe hereby reserves all exemptions from circulars, policies, manuals, guidance and rules adopted by the Indian Health Service to the fullest extent permitted by Section 517(e) of the ISDEAA (25 U.S.C. § 5397(e)).

Without waiving such exemptions, the Tribe may follow the following rule recognized by IHS in Indian Health Manual (IHM) Part 2, Chapter 3:

(a)     The Tribe's self-insurance program shall not be treated as an alternate resource for purposes of PRC unless agreed to by the Tribe.  IHM § 2-3.8. H.

**Section 29 – Good Faith and Fair Dealing.** The parties to this Agreement are under a duty of good faith and fair dealing.  In fulfilling its responsibilities under the ISDEAA and the IHCIA, the IHS will conduct all relations with the Tribe on a government-to-government basis and consistent with the goals and policies set forth in the ISDEAA (25 U.S.C. §§ 5301-02) and the IHCIA (25 U.S.C. §§ 1601-02).

**Section 30 – Effective Date and Duration.** This Funding Agreement shall become effective as of the earlier of the date of approval by the Secretary or deemed approval per 25 U.S.C. §5387(b), and remain in effect until a successor agreement is negotiated and becomes effective.

**Section 31 – Model Provisions:** The parties hereby incorporate the following provisions based on model language set forth in 25 U.S.C. § 5329(c) and 25 U.S.C. § 5387(b)-(f):

(a)     The United States reaffirms the trust responsibility of the United States to the Tribe to protect and conserve the trust resources of the Indian tribe(s) and the trust resources of individual Indians. 25 U.S.C. § 5329(c)(1)(d)(1)(A).

(b)     Nothing in this Agreement may be construed to terminate, waive, modify, or reduce the trust responsibility of the United States to the tribe(s) or individual Indians. The Secretary shall act in good faith in upholding such trust responsibility. 25 U.S.C. § 5329(c)(1)(d)(1)(B).

(c)     The Secretary shall act in good faith in cooperating with the Tribe to achieve the goals set forth in the Indian Health Care Improvement Act (25 U.S.C. § 1601 et seq.). 25 U.S.C. § 5329(c)(1)(d)(2).

(d)    In the negotiation of compacts and funding agreements the Secretary shall at all times negotiate in good faith to maximize implementation of the self-governance policy. The Secretary shall carry out this obligation in a manner that maximizes the policy of tribal self-governance, and in a manner consistent with the purposes specified in section 3 of the Tribal Self-Governance Amendments of 2000. 25 U.S.C. § 5387(e).

(e)    To the extent that programs, functions, services, or activities (or portions thereof) carried out by the Tribe herein reduce the administrative or other responsibilities of the Secretary with respect to the operation of Indian programs and result in savings that have not otherwise been included in the amount of tribal shares and other funds determined under 25 U.S.C. Section 5388(c), the Secretary shall make such savings available to the Tribe for the provision of additional services to program beneficiaries in a manner equitable to directly served, contracted, and compacted programs. 25 U.S.C. § 5387(f).

(f)    The Secretary is prohibited from waiving, modifying, or diminishing in any way the trust responsibility of the United States with respect to Indian tribes and individual Indians that exists under treaties, Executive orders, other laws, or court decisions. 25 U.S.C. § 5387(g).

PECHANGA BAND OF INDIANS

By:    _____

    Mark Macarro, Chairman
    Pechanga Band of Indians

Date:    _____

UNITED STATES OF AMERICA
SECRETARY OF HEALTH AND HUMAN SERVICES

By:    _____

    Benjamin Smith
    Acting Director
    Indian Health Service

Date:    _____